UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ANTONIO KING, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:06-CR-72 |
| ) | No. 2:10-CV-166 |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Antonio King ("petitioner" or "King"), a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, [Doc. 305]. The United States has responded in opposition, [Doc. 311], and the matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that King is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary and the motion will be DENIED.

### I. Procedural Background

Mekaela Arbitron Meadows, Wendall A. Lanier and William Jamaal McGee were indicted by the federal grand jury on October 24, 2006, [Doc. 12]. They were charged in a two count indictment with possession with the intent to distribute 50 grams or more of cocaine base in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A) and attempt to manufacture five grams or more of cocaine base in violation of 18 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). After guilty pleas by Lanier and McGee, a superseding indictment was returned by the grand jury on March 13, 2007, charging Meadows, King, Mindy Wheelock, Alexis Blackshear and Martha Tatchi, [Doc. 91]. King was charged in all four counts of the superseding indictment. Count One charged King, Meadows and Blackshear with conspiracy to distribute and to possess with the intent to distribute five

kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); in Count Two King, Meadows, Wheelock, Blackshear and Tatchi were charged with conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A); Count Three charged King, Meadows, Wheelock and Tatchi with possessing with the intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and Count Four charged King and Meadows with manufacturing 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On June 21, 2007, the government filed an information pursuant to 21 U.S.C. § 851(a)(1) giving notice of its intention to seek enhanced punishment by reason of King's two prior felony drug convictions, [Doc. 140]. After the filing of various pretrial motions, counsel for the defendant advised the Court that petitioner was entering a guilty plea, [see Doc. 178], and the plea agreement signed by King on September 6, 2007, was filed on September 11, 2007, [Doc. 188]. Pursuant to the plea agreement, petitioner pled guilty to Count Two of the superseding indictment on October 1, 2007, [see Doc. 210]. A presentence investigation report ("PSR") was ordered.

The PSR, disclosed to the parties on January 22, 2008, found King to be a career offender within the meaning of USSG § 4B1.1; however, King was subject to a mandatory term of life imprisonment because of his prior felony drug convictions and his guidelines range was therefore life imprisonment without parole. [PSR, ¶¶ 26, 54]. Neither party objected to the PSR. A motion for downward departure was filed by the United States pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1 on February 5, 2008, [Doc. 272]. In its motion for downward departure, the government recommended a reduction from the otherwise mandatory life sentence to an advisory guidelines range of 292 to 365 months of imprisonment. [*Id*. at 2].

2

Sentencing proceedings were held on April 14, 2008. The government's motion for downward departure was granted and King was sentenced to 292 months of imprisonment, [see Doc. 294]. Judgment was entered on April 23, 2008, [Doc. 295], and King's notice of appeal was filed on April 24, 2008, [Doc. 296]. On May 4, 2009, the United States Court of Appeals for the Sixth Circuit dismissed King's appeal based on the appellate-review waiver contained in his plea agreement. The instant motion to vacate, correct or set aside sentence was then filed by King on August 6, 2010.

## II. Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b). Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United*

3

*States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

### III. Analysis and Discussion

Although petitioner states several variations of his claims, his claims essentially boil down to two: (1) He faults trial counsel, as well as the Court, for failing to adequately inform him that he faced a mandatory life sentence in the case because of his two prior felony drug convictions; and (2) he faults counsel for not informing him that he would be classified as a career offender under the sentencing guidelines. He asserts that, had he been properly informed, he would not have entered a guilty plea in the case.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective of counsel:

4

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

When considering the second prong in relation to a guilty plea, the movant must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("a defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he

5

would have pleaded not guilty and gone to trial"), *cert. denied*, 516 U.S. 1058 (1996). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

### A. Mandatory Minimum

King stipulated that he had two prior felony drug convictions. On August 19, 1998 he was convicted of a felony offense of possession with intent to distribute cocaine and marijuana in the Superior Court of Gwinnett County, Georgia and on August 5, 1999 he was convicted of the felony offense of possession with intent to distribute cocaine in the Superior Court of DeKalb County, Georgia. [*See* Doc. 188, Plea Agreement at ¶ 4(e)]. Because of the two prior felony drug convictions, King faced a mandatory term of life imprisonment without release. *See* 21 U.S.C. § 841(b)(1)(A) ("if any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . ."). King alleges that counsel was ineffective in failing to inform him that he faced a mandatory minimum life sentence, instead assuring him that his mandatory minimum would be ten years, [Doc. 305-1 at 7]. He further claims that the Court failed to advise him of the required mandatory minimum penalty in violation of Rule 11(b)(1)(I), Federal Rules of Criminal Procedure. These claims are flatly and clearly contradicted by the record in the case.

#### 1. The Provisions of the Plea Agreement

As noted above, petitioner signed a plea agreement with the United States on September 6, 2007, [Doc. 188]. Not only is the plea agreement signed by the petitioner, he initialed

each page of the plea agreement with the initials "A.K." in the lower right corner. The first paragraph of the plea agreement clearly sets out the punishment for the offense: "Because of defendant's prior felony drug convictions, the maximum penalty to which the defendant will be exposed by virtue of the guilty plea is a ***mandatory*** term of life imprisonment without release. . ." [Doc. 188 at ¶ 1(a)]. The plea agreement contained a stipulation that "Defendant King committed the instant offense after having been convicted of two prior felony drug convictions punishable by imprisonment for more than one year under the law of Georgia," that is, the August 19, 1998 and August 5, 1999 convictions referenced above, [*id.* at ¶ 4(e)]. Petitioner acknowledged that "[a]ny estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the court," [*id.* at ¶ 11].

### 2. The Rearraignment Hearing

During the change of plea hearing on October 1, 2007, petitioner testified under oath that he had had sufficient opportunity to discuss the case with his lawyer, that his lawyer had advised him as to the nature and meaning of the charges against him and that he had been advised by his attorney as to every element of the offense which the government was required to prove in order to obtain a conviction. [Doc. 300 at 4]. He unequivocally testified that he had read the plea agreement, that his attorney had explained "all the terms and conditions of the plea agreement," and that he "fully understood all the terms and conditions" of the plea agreement. [*Id.* at 5]. Petitioner acknowledged signing the plea agreement and that he was satisfied with the way his lawyer had represented him. [*Id.* at 6]. Petitioner was extensively questioned by the Court and acknowledged that he understood his legal rights which would be waived by the entry of the guilty plea, [*id.* at 6-7]. King testified that no officer or agent of the government had promised or suggested a lighter

7

sentence or any other form of leniency, except for the promises set out in the plea agreement, and that no other person had made any promise or threat to induce him to plead guilty. [*Id*. at 8].

King testified that he had read the stipulation of facts contained in paragraph four of the plea agreement carefully, that he agreed with the summary of what he did in the case as set out in that paragraph, and that everything contained in paragraph 4, including the record of prior convictions, was in fact true. [*Id.* at 9]. King then pled guilty and unequivocally acknowledged that he was pleading guilty because he was in fact guilty of the offense, [*Id.* at 10]. The following exchange regarding the statutory penalties for the offense then occurred among the Court, the Assistant United States Attorney and King:

> THE COURT: MS. HEBETS, WILL THE GOVERNMENT PLEASE ADVISE THE DEFENDANT AS TO THE MAXIMUM POSSIBLE PENALTY PROVIDED BY LAW FOR [THIS] OFFENSE.
>
> MS. HEBETS: YES, YOUR HONOR. ***BECAUSE OF THE DEFENDANT'S PRIOR FELONY DRUG CONVICTIONS, THE MAXIMUM PENALTY IS A MANDATORY TERM OF LIFE IMPRISONMENT WITHOUT RELEASE***, A FINE OF $8 MILLION, A TERM OF SUPERVISED RELEASE OF AT LEAST 10 YEARS TO LIFE AND A MANDATORY COURT ASSESSMENT OF $100.
>
> Q. ALL RIGHT. MR. KING, DO YOU UNDERSTAND THAT THAT IS THE MAXIMUM PENALTY THE COURT CAN IMPOSE IN THIS CASE?
>
> A. YES, SIR.
>
> Q. AND DO YOU UNDERSTAND THAT AS MS. HEBETS JUST SAID THAT ***BECAUSE OF YOUR PRIOR DRUG CONVICTIONS THAT YOU ARE SUBJECT TO A MANDATORY LIFE SENTENCE IN THIS CASE BY STATUTE?***
>
> A. YES.

> Q. AND DO YOU UNDERSTAND THAT ABSENT A GOVERNMENT MOTION FOR DOWNWARD DEPARTURE OR SOME OTHER VERY EXTRAORDINARY CIRCUMSTANCE THAT THIS COURT WILL BE REQUIRED TO IMPOSE THE LIFE SENTENCE REQUIRED BY STATUTE?
>
> A. YES, SIR.
>
> Q. AND DO YOU UNDERSTAND THAT A SENTENCE OF IMPRISONMENT IN THIS COURT IS NONPAROLEABLE, THAT IS YOU WILL BE REQUIRED TO SERVE THE ENTIRE SENTENCE AND YOU WILL NOT BE RELEASED ON PAROLE?
>
> A. YES, SIR.

[*Id.* at 10-11]. During the Court's questioning of the petitioner about the appellate waivers contained in his plea agreement, the Court asked King if he understood that "since there is a mandatory minimum life sentence in this case, that would in fact be the guideline range." King acknowledged that he understood. [*Id.* at 12-13].[1]

The Court also advised petitioner of the existence of the United States Sentencing Commission Sentencing Guidelines and that it would ordinarily advise a defendant of the factors to be considered in determining an appropriate sentence. The petitioner was specifically asked, in light of the mandatory minimum sentence, whether he understood "that those guidelines have no impact in [his] case at all." He answered "yes, sir." The Court then reiterated that the statute requires a mandatory life sentence in the case. King was asked by the Court: "You understand that

---

[1] As noted earlier, the Sixth Circuit Court of Appeals dismissed King's appeal on the basis of his waiver of his right to a direct appeal contained in the plea agreement. The plea agreement also contains a waiver of King's right to file any pleadings pursuant to § 2255 "except for ineffective assistance of counsel and prosecutorial misconduct not known to [him] at the time of the entry of the judgment" in the case. The United States has not argued that King has waived his right to file the instant § 2255 motion and the Court will not consider the argument on its own motion.

9

Case 2:06-cr-00072-JRG-MCLC Document 326 Filed 08/14/13 Page 9 of 13 PageID #: 616

the statute requires a mandatory life sentence in this case?" King's answer was "Yes, sir." [*Id*. at 13]. Petitioner's counsel then advised the Court that he had discussed with petitioner "about the plea agreement in relation to the mandatory term, we've talked about the concept of downward departure motions and everything else; . . . but I do want the Court to know that he's fully cooperating with the government in this case." Petitioner then acknowledged that he understood the government's discretion with respect to whether to file a motion for downward departure and that he understood that the Court had very limited power to review the government's decision. [*Id*. at 14].

### 3. The PSR and Sentencing Hearing

As noted above, the PSR was disclosed to the parties on January 22, 2008. The PSR clearly set out that petitioner was subject to "mandatory life imprisonment without release" and that his guidelines range was a term of life imprisonment because of the statutory mandatory minimum. At the sentencing hearing, King affirmed that he had received and reviewed a copy of the PSR with his attorney, [Doc. 301 at 18]. In addition, King acknowledged at least twice during the sentencing hearing that he was aware that he was facing a life sentence, [see Doc. 301 at 18 ("to be in a situation where I'm faced with a life sentence has made me look at my life . . ."); Doc. 301 at 23-24 (I just thought maybe one day when they do get past, that maybe I'd be out of here, that I wouldn't be spending a life sentence in prison; . . .")].

From all of this, it is quite apparent and beyond question that petitioner understood throughout these proceedings that he was facing a mandatory life sentence in the case because of his two prior felony drug convictions. Petitioner has no legitimate claim that counsel was deficient in any way or that the Court made any error related to the mandatory minimum sentence. To the extent petitioner now claims otherwise, his claims are simply not credible and are flatly contradicted

10

by the record in the case. These issues lack merit.

    **B. Career Offender Status**

The probation officer determined that petitioner is a career offender within the meaning of USSG § 4B1.1. That section of the guidelines provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a). There is no question, given petitioner's stipulation as to two prior felony drug convictions, that he is a career offender within the meaning of the guideline. With respect to his claim, i.e., that he was not informed of the applicability of the career offender guideline and would not have pleaded guilty had he known, it simply lacks merit. King can show neither deficient performance nor prejudice as it relates to this claim.

First of all, aside and apart from whether or not counsel advised King of his career offender status, the Court clearly did advise him it would make no difference in his guidelines range. The petitioner was clearly advised during his rearraignment that his guidelines range in the case would be determined by reference to the mandatory minimum life sentence in the case and that the guidelines or otherwise have no impact in his case. The following exchange occurred:

> Q. ALL RIGHT. MR. KING, I GENERALLY INFORM THE DEFENDANTS OF THE EXISTENCE OF THE UNITED STATES SENTENCING COMMISSION SENTENCING GUIDELINES AND OF THE FACTORS THAT I WILL CONSIDER IN DETERMINING AN APPROPRIATE SENTENCE IN THIS CASE, BUT DO YOU UNDERSTAND THAT THOSE GUIDELINES HAVE NO IMPACT IN YOUR CASE AT ALL?
>
> A. YES, SIR.

11

> Q. YOU UNDERSTAND THAT THE STATUTE REQUIRES A MANDATORY LIFE SENTENCE IN THIS CASE?
>
> A. YES, SIR.

[Doc. 300 at 13]. Although King's guidelines range based on his career offender status was 262 to 327 months of imprisonment, that range was restricted by the statutory mandatory minimum and the guidelines range became life without release. Thus, the career offender guideline had no impact whatsoever on King's ultimate sentence in the case and he has suffered absolutely no prejudice based on the alleged deficient performance.

### IV. Conclusion

For the reasons set forth above, the Court holds petitioner's convictions and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE